UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUDITH ANN I.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 2:18-cv-05252-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for disability benefits. She contends the Administrative Law Judge (ALJ) failed to properly evaluate medical opinion evidence, Plaintiff's allegations, and lay witness evidence, all of which impacted the ALJ's residual functional capacity (RFC) assessment. Plaintiff seeks remand for the award of benefits. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

On June 12, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning November 19, 2013. Tr. 17. The claim was denied initially on August 22, 2014, and upon reconsideration on April 10, 2015. On June 15, 2015, Plaintiff filed a written request for hearing (20 CFR 404.929 et seq.). Plaintiff appeared and testified at a hearing held on May 12, 2016 and again at a supplemental hearing on September 9, 2016. Also appearing and testifying were W. Benton Boone, M.D., a

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 1

medical expert, and Leta R. Berkshire, a vocational expert. Plaintiff's husband, Bob Inman, appeared and testified at the supplemental hearing. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. Tr. 17. On December 7, 2016, the ALJ decided that Plaintiff was not disabled. Tr. 14-31.

Utilizing the five-step disability evaluation process,[1] the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since November 19, 2013, the application date (20 CFR 416.971 *et seq.*) and at step two, the ALJ denied Plaintiff's application because the ALJ found "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 19-24. In the alternative, the ALJ found that "even if the claimant had a medically determinable impairment, it would not be disabling at step four" and concluded that "if Plaintiff had medically determinable impairments, they would be characterized as severe in combination consisting of Chronic Pain Syndrome, Headaches, Optic Nerve Disorder, and Photophobia (20 CFR 404.1520(c))." Tr. 24.

At step three, the ALJ found that these impairments do not meet or equal a Listing.[2] Tr. 680. The ALJ found that if Plaintiff had the severe impairments listed, she would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels that does not require exposures to hazards; that will allow wearing dark sunglasses; and that does not require exposure to bright light. Tr. 25. At step four, the ALJ found that Plaintiff would still be capable of performing her past relevant work as a claims clerk with the limitations noted in the RFC.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 2

The Appeals Council denied Plaintiff's request for review of the ALJ decision on January 24, 2018 (Tr. 1-6), making the ALJ's decision the final decision.

## DISCUSSION

**A.    The ALJ Did Not Err in Evaluating Medical Opinion Evidence**

    **1.    Alternative Findings of Severe Impairments**

Plaintiff first contends the ALJ erred in finding that "none of her impairments were medically determinable, let alone severe" and although the ALJ made alternate findings that Plaintiff's combination of impairments (Chronic Pain Syndrome, Headaches, Optic Nerve Disorder, and Photophobia) were severe, Plaintiff contends that the ALJ's primary finding "appears to have undermined the ALJ's analysis." Dkt. 12, pp. 3-4. The Commissioner concedes that the ALJ's finding that Plaintiff had no medically determinable impairment was in error but the error was harmless. Dkt. 17, p. 2. The Court agrees.

Errors are harmless if they are inconsequential to the ultimate non-disability determination. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). After incorrectly finding no medically determinable impairment, the ALJ went on to make alternative findings and consider the case as though Plaintiff had a combination of "Chronic Pain Syndrome, Headaches, Optic Nerve Disorder, and Photophobia." Tr. 24. The mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The ALJ concluded Plaintiff would have more than minimal

limitations from the impairments in combination. Tr. 25. And as discussed in more detail herein, the erroneous finding did not materially affect the ultimate non-disability determination.

### 2. Medical Evidence

Plaintiff contends the ALJ erred in concluding that none of the specialists or ophthalmologists who examined her found any objective findings, laboratory tests, or examination findings to support her allegations and argues that many physicians described clinical findings to support Plaintiff's testimony. The record does not support this contention.

The ALJ gave great weight to the testimony of the Benton W. Boone, M.D., the medical expert who testified at the hearing. Dr. Boone found no ophthalmologic impairment that would meet or equal a Listing, Tr. 44-46. He testified that Plaintiff does not have a decrease in central vision; her vision was 20/20 in both eyes; there are no medical or ophthalmological findings in the record which would give rise to Plaintiff's complaints and there was no apparent basis for her symptoms or degree of symptoms she claimed. He could not say if it was purposeful, but there was no evidence showing the existence of a medically determinable impairment. *Id.* The ALJ noted that Dr. Boone is an ophthalmology expert, that he had the opportunity to review Plaintiff's records, and that his opinion is consistent with the objective evidence in the record, which show no abnormalities that support the degree of limitations alleged. Tr. 23.

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). When there is a conflict between the opinions of a treating physician and another physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir.1995); *see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986). Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

The Court finds the ALJ gave sufficient reasons, supported by substantial evidence in the record, for rejecting the opinions of Drs. May, Choi, Nguyen, and Kooiker, who opined that Plaintiff could not work (either temporarily, on a part time basis, or at all) because those opinions were not supported by objective medical findings to support the existence of Plaintiff's condition. When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

**Dr. May – August 5, 2015**

In an August 25, 2015 report to Washington's Department of Labor and Industries, Eugene May, M.D. stated that Plaintiff "is unable to return to work because of a chronic headache syndrome causing pain and photosensitivity. Exposure to almost the least amount of light results in her experiencing pain to the level that she cannot work." Tr. 621 (Ex. 10F, p. 3). He also stated that the "restriction is temporary" and that Plaintiff "is capable of any physical activity that does not require exposure to light." *Id.* Dr. May recommended that Plaintiff pursue "comprehensive headache management" (to include medication, Botox injections and nerve blocks), psychotherapy, and ongoing routine eye care. Tr. 622.

The ALJ gave little weight to this opinion "as it appears to be based on the claimant's reports as his examination yielded no abnormal findings. The claimant's vision was normal and

there were no abnormalities that would indicating any limitations or impairments." Tr. 24. The Court does not find that the ALJ erred in giving little weight to Dr. May's opinion.

Plaintiff argues that Dr. May relied on much more than her own reports, but her citations to the record are those portions of Dr. May's notes where he is merely repeating what Plaintiff told him of her condition. For example, Dr. May refers to Plaintiff's reports that her pain had decreased, she was experiencing less photosensitivity, she was able to read more, and that Dr. Sullivan (her treating ophthalmologist), had suggested to her that she was exaggerating and recommended that she return to work. Dr. May also reviewed visual field testing, neurological examinations, and CT scans performed in January, February, and March of 2014 and June of 2015 – all of which were normal. *Id.*, at 620. Dr. May's neuro-ophthalmic examination of Plaintiff on August 25, 2015 was also normal. Tr. 22 (Ex. 10F). Other than listing the results of the examination, Dr. May offered no comments. Although Plaintiff's counsel infers that missing several of the pseudoisochromatic plates during her eye examination is somehow significant, Dr. May does not comment on the results of the colored blind test or explain how this is relevant to Plaintiff's ability to function in light of a chronic headache syndrome causing pain and photosensitivity.

**Dr. Jon C. Kooiker**

On February 18, 2014, Plaintiff was first seen by Dr. Kooiker, a neurologist, who assessed "chronic headache possible chronic migraine with associated photic sensitivity – no medications and no imaging studies required." Tr. 426-427 (Ex. 2F, pp. 6-7). Dr. Kooiker did not examine Plaintiff or offer an opinion regarding Plaintiff's functionality (contrary to counsel's argument – Dr. Kooiker's notations that Plaintiff had experienced headaches since her mid-20's, could tolerate only 40 watt light bulbs, and could not function through much of the day – was

merely a recitation of Plaintiff's reports on her functioning (see Tr. 424)). Instead, Dr. Kooiker noted that given her current subjective symptoms of chronic pain syndrome and migraine headache, Plaintiff would need a neuro-ophthalmologist to explain the pathophysiology of her presentation and document some type of objective findings to submit to the Washington Department of Labor and Industries as she "currently has a syndrome with out [sic] a more secure diagnosis and causation." Dkt. 611 (Ex. 8F, p. 4). The ALJ did not err in summing up the results of Dr. Kooiker's treatment of Plaintiff in his opinion. See Tr. 22.

**Dr. Youngbin Choi**

After Drs. Kooiker and May labeled Plaintiff's condition as "ocular migraine," Plaintiff sought a second opinion and documentation for her disability case from Dr. Choi on June 1, 2016. Tr. 400. Dr. Choi saw Plaintiff on June 1, 2016 and again on August 16, 2016. Dr. Choi noted that Plaintiff was alert, with normal motor strength, gait and stance. He noted intermittent facial twitching but not facial nerve palsy. He diagnosed Plaintiff with "light related optic nerve injury, chronic refractory photophobia, etiology unclear" and "pathophysiology ...unclear". He recommended that she continue with conservative treatment. Tr. 399-404 (Ex. 22E/9).

On August 16, 2016, Dr. Choi noted Plaintiff's symptoms remained the same. In a section of his report entitled "interval history," Dr. Choi listed Plaintiff's daily activities as related to him by Plaintiff. Tr. 408. Dr. Choi's assessment included "light related optic nerve injury and chronic refractory photophobia, etiology unclear" and he then opined that Plaintiff "is able to return to work only part time …2-3 hour per day what she feels comfortable with." Tr. 410.

The ALJ concluded that Dr. Choi's opinion of Plaintiff's current level of functioning (that she is only able to return to work part time for two to three hours per day) "per his notes,

was based on the claimant's statements that she has not returned to normal activities such as cooking, seeing friends, and using the computer…". Tr. 24. The ALJ gave little weight to Dr. Choi's opinion because "the record does not include any causation or objective evidence of a deformity, disease, or injury that supports the finding of any limitations" and Plaintiff's "allegations and reports are not consistent with the normal findings found throughout the record." *Id.* This was not error. *See, e.g.*, *Matney*, 981 F.2d at 1019 ("An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.")

**Lan Nguyen, M.D.**

Dr. Nguyen diagnosed Plaintiff with migraine and associated photophobia. Tr. 561. Dr. Nguyen saw Plaintiff on several occasions between January 2014 and December 2014. By December 28, 2014, Plaintiff reported that her headaches were ninety-five percent improved, but she still wore dark glasses around the house, was unable to drive, use the computer, or watch television, and was still having eye strain and photophobia. Tr. 558. The ALJ summarized Dr. Nguyen's treatment as follows:

> Dr. Nguyen provided multiple forms [Shared Leave Medical Certificates to the State of Washington] on the claimant's behalf. In February of 2014, she stated that the claimant has severe migraines since the incident. She believed the claimant would be able to return to work on April 1, 2014 (Exhibit 5F/51). On April 24, 2014, she stated that the claimant has chronic migraines with eye injury/strain. She stated that the claimant was unable to work due to light. The claimant got new glasses in April of 2014 and had an improvement in symptoms. She anticipated that the claimant would return to work in two months (Exhibit 5F/67). On June 26, 2014, Dr. Nguyen stated that the claimant has chronic migraines with eye strain due to exposure to bright light. She opined that the claimant is unable to perform seventy percent of her past work and would never return to her job due to that inability (Exhibit 5F/9).

The ALJ concluded, "[l]ittle weight is given to her opinion as it is not based on any demonstrated abnormality, nor any signs or findings. It appears these limitations are based solely on the claimant's reports, which are not consistent with any of the objective evidence in

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 8

the record. All examinations show normal vision." Tr. 23-24.

Plaintiff argues that Dr. Nguyen was able to base her opinions on her clinical observations of Plaintiff's impaired functioning at her many medical appointments and that the issue here is not whether Plaintiff has normal visual acuity but whether she has severe photophobia. However, other than noting that Plaintiff was wearing dark glasses, Dr. Nguyen made no clinical observations of "Plaintiff's impaired functioning at her many medical appointments" and Plaintiff has not identified any in the record. Moreover, Dr. Nguyen performed no eye exams, visual acuity tests, blood tests, CT scans, or any other diagnostic test to determine whether an objective basis for Plaintiff's complaints existed and, when such diagnostic tests were performed by others, they were all negative. Dr. Nguyen also did not prescribe any medication or treatment for the described chronic migraine condition, which in Dr. Nguyen's opinion was severe enough to keep Plaintiff from completing seventy percent of her work.

Dr. Nguyen's opinion that Plaintiff is unable to perform seventy percent of her work is unsupported by rationale, treatment notes, or objective medical findings. Therefore, the ALJ did not err in giving little weight to this opinion.

**Norman Staley, M.D. and Gordon Hale, M.C.**

Plaintiff argues that the findings of Dr. Staley and Dr. Hale contradict the ALJ's findings that she had no severe medically determinable impairment. On August 22, 2014, Dr. Staley assessed Plaintiff for the State agency on August 22, 2014. He noted that Plaintiff's migraines and diseases of white blood cells were severe impairments, and opined that she could perform medium work but must avoid concentrated exposure to hazards (Ex. 2A). Tr. 114. Dr. Hale assessed Plaintiff for the State agency on April 9, 2015 and affirmed Dr. Staley's opinion. He

also opined that the claimant should avoid bright light (Ex. 4A). The ALJ found no basis in the medical conditions for limiting Plaintiff to medium work but gave great weight to the limitations regarding hazards and bright lights are given great weight for his alternative finding and he included the limitations in Plaintiff's RFC. TR. 24. Thus, the ALJ did not err in his consideration of this medical evidence.

**Other Medical Evidence**

Plaintiff argues that other medical evidence supports her testimony about her functional limitations. Plaintiff cites to Dr. Laurence C. Schadt's December 9, 2013 medical note on which he wrote "migraines with extreme photophobia," but Dr. Schadt also noted he could not examine Plaintiff "due to photophobia" (Tr. 420) and on January 9, 2014, he noted a "spontaneous improvement" of her photophobia "over 7 weeks" and advised Plaintiff to return to work and seek "neurology E&N" (Tr. 419). Plaintiff also cites to Dr. Joseph Ye's medical note of March 13, 2014. But Dr. Ye merely found that Plaintiff's frequent migraine-like headaches could be associated with upper respiratory symptoms such as chronic sinusitis, and after finding an increase in inner ear fluid accumulation, recommended Zyrtec to alleviate her symptoms. Tr. 444. On May 16, 2016, Dr. David V. Pratt, assessed idiopathic headaches and photophobia, possibly early blepharospasm, and eye pain, but merely recommended that Plaintiff keep an appointment with a neurologist for her headaches and make an appointment with an optometrist. Tr. 405.

Thus, it is unclear how these medical notes support Plaintiff's claim that she is unable to work at all due to debilitating migraines and photophobia.

**B.      The ALJ Did Not Err in Evaluating Plaintiff's Allegations**

In evaluating the effect of pain and other symptoms on Plaintiff's RFC, the ALJ must

determine if the Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. If so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's capacity for work. *See Id*. If there is no evidence of malingering, the ALJ may reject Plaintiff's testimony about the severity of his symptoms only by making specific findings stating clear and convincing reasons supported by substantial evidence for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff alleged that she has extreme light sensitivity with headaches that requires her to spend most of her time in bed; she lives with the lights off, covers over the windows, and only goes outdoors at dawn and dusk, and needs considerable assistance from her husband. Tr. 26. The ALJ reviewed Plaintiff's allegations of disabling limitations and provided several legally acceptable reasons for concluding that the evidence was not consistent with Plaintiff's allegations, *i.e.*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

First, the ALJ noted that Plaintiff's allegations were inconsistent with the totality of the evidence in the record and that her testimony and that of her husband regarding the degree of her sensitivity to light was more extreme than what she previously told Drs. Kooiker and Nguyen (she told them she could tolerate sunlight with glasses (Exs. 2F and 4F/40) and is more extreme that what she reported in her Labor and Industries claim (Ex. 7E/19, 21-25)). The ALJ also noted that Plaintiff's account in her testimony of how the injury occurred did not make sense as she testified that the light source was behind her and there was no reflective material in front of her and that this testimony also differed from statements she gave elsewhere where she stated that she looked into the light source of the reflection given off the mobile (Ex. 17E/17). Tr. 26. This

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 11

1 was not error as inconsistencies in a claimant's testimony can undermine the weight that can be
2 given to a claimant's symptom reports. *See*, *e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
3 2007) (An ALJ may consider inconsistencies in testimony or between testimony and conduct,
4 daily activities, and unexplained or inadequately explained, failure to seek treatment or follow a
5 prescribed course of treatment).

Next, the ALJ noted that Plaintiff's treating opthalmologist, Dr. Sullivan, felt that she was exaggerating her symptoms, and that this undermines the weight that can be given to her symptoms. Tr. 26. Plaintiff counters that the ALJ was just repeating what Plaintiff related to Dr. May and as the record contains no evidence from Dr. Sullivan, this is not a proper reason to discount her testimony. Dkt. 18 at 6 (citing Tr. 619). The Court notes that Plaintiff repeated this statement in her sworn answers to interrogatories submitted to the Department of Labor & Industries. *See* Tr. 354 (Ex. 17E, p. 29). However, to the extent the ALJ erred in relying on Plaintiff's statements as to what her treating doctor told her, the error is harmless as he gave sufficient clear and convincing other reasons supported by substantial evidence for discrediting her symptom testimony.

The ALJ also noted activities that seemed to be inconsistent with the degree of activity Plaintiff claimed, such as exercising daily and weekly visits with a friend at Starbucks. Tr. 26. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.") "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Finally, the ALJ noted that Plaintiff alleged "photosensitivity, pain, and difficulty even keeping her eyes open." Tr. 26. However, the ALJ observed that "no doctor has found evidence to support these claims. Her allegations cannot be relied upon because of this inconsistency." Tr. 26. *See*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (An ALJ may consider the lack of supporting objective evidence when evaluating an individual's complaints, as long as it is not the only factor considered.)

In sum, the ALJ did not err in his assessment of Plaintiff's testimony as his assessment was supported by specific, clear, and convincing reasons.

**C.     The ALJ Did Not Err In Evaluating Lay Witness Testimony**

Plaintiff's husband testified that Plaintiff's sensitivity to light is very extreme – he had to do most of the tasks; she is up very few hours in the day; he had to blacken the entire house; he mostly lives in the garage because he cannot watch television or work on the computer near her; she cannot drive and has to ride with a towel over her head; he had to move in with friends after he was injured in a motorcycle accident in May of 2015 because she could not help him up if he fell; there is very little light in their house; she cannot use a computer, drive a vehicle, be exposed to direct sunlight, or go out and see friends.

The ALJ considered his testimony but did not give them great weight because "his testimony regarding the degree of sensitivity to the light is more extreme than the claimant has previously told Dr. Kooiker and Dr. Nguyen"; "is also more extreme than the claimant's reports elsewhere in the record (See, Exhibit 17E/19, 21-25)"; and "[h]is reports are not consistent with the totality of the evidence in the record." Tr. 23.

One germane reason is sufficient to discredit statements from a lay witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). When a lay witness's statements

are similar to a claimant's complaints, the ALJ's reasons for rejecting a claimant's statements shall apply to the lay witness's statements. *Valentine*, 574 F.3d at 694. And, although lack of medical support for lay witness statements is not a reason to discredit them, *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017), inconsistency with medical evidence is sufficient, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As the ALJ noted, the testimony of Plaintiff's husband regarding the degree of her sensitivity to light was more extreme than Plaintiff reported to her doctors and more extreme than Plaintiff reported elsewhere in the record. Tr. 23, 344-50. This reasoning is specific and germane to the lay witness' testimony and is sufficient. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 31st day of January, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge